UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OMAR AWAD,
    *Plaintiff*,

v.

SIERRA PRE-TRIAL *et al.*,
    *Defendants*.

No. 3:18-cv-1506 (JAM)

**ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE**

Plaintiff Omar Awad was a prisoner in the custody of the Connecticut Department of Correction at the time that he filed the complaint in this action. He alleges that a state court ordered him to reside at a private treatment facility where he was subject to loathsome living conditions. Because I conclude that Awad has failed to allege that any of the defendants he has named were state actors, I conclude that he has not alleged plausible grounds for relief under federal law, and therefore I will dismiss his complaint.

**BACKGROUND**

Awad was a prisoner at Garner Correctional Institution at the time that he filed this lawsuit, and he has since been released and lives elsewhere in Connecticut. His complaint names several defendants. The first named defendant is "Sierra Pre-Trial Program," which Awad describes as an "inpatient/residential, drug and mental health program" located at an address of 48 Howe Street in New Haven, Connecticut. The second and third named defendants are "Gail Sanches," who is alleged to have been the Sierra program director, and someone named "Stanly" who is alleged to have been the Sierra program manager. The complaint also lists numerous John and Jane Doe defendants with very little description of anything they allegedly did.

The following facts as alleged in the complaint are assumed to be true solely for purposes of my initial evaluation of the complaint. On November 20, 2015, a court ordered Awad to

1

receive inpatient rehabilitation and mental health treatment at the Sierra Pre-Trial Program for 90 days. *See* Doc. #1 at 6 (¶ 1). He remained at the Sierra Pre-Trial Program facility for seventy-seven days. *Ibid.* (¶ 2).

The Sierra Pre-Trial Program facility was infested with bed bugs, roaches, and parasites. *Ibid.* (¶ 3). At night, Awad had difficulty sleeping because of bed bug bites that caused his body to itch. *Id.* at 7 (¶ 4). He could not sleep without taking medication. *Ibid.* Awad informed Sanches and Stanly about the insect infestation, but they ridiculed him and ignored his complaints. *Id.* at 7-8 (¶¶ 5-16).

Awad also alleges that the portions of food he received each day were small and did not fill him up. *Id.* at 8-9 (¶¶ 17-18). Sanches and Stanly would not permit Awad or any other residents at the facility to buy food from outside vendors to store in the facility or to order take-out meals. *Id.* at 9 (¶ 18).

At one point while still residing at the facility, Awad had a catering job to earn money. *Ibid.* (¶¶ 19-20). But Sanches got him fired from this job because of her refusal to timely sign passes for him to leave the program when he needed to be at work. *Id.* at 9-10 (¶¶ 21-24). Sanches subsequently "violated" Awad for "writ[]ing her up" regarding the sanitation and job issues. *Id.* at 10 (¶ 25).

On February 5, 2016, a judge sentenced Awad to 3 years of imprisonment. *Ibid.* (¶ 25).[1] After his sentencing, Awad asked family members to go to the Sierra Pre-Trial Program facility to retrieve $600 worth of personal property and cash that he had left in his room. Doc. #1 at 10

---

[1] According to the Connecticut Judicial Branch website, Awad was sentenced on February 5, 2016, to five years jail, with execution suspended after three years, arising from a second-degree kidnapping that occurred on July 16, 2014, and for which he entered a guilty plea on April 17, 2015. *See* State of Connecticut Judicial Branch website, Criminal / Motor Vehicle Case Look-up (Convictions – Search by Defendant / name Omar Awad), https://www.jud.ct.gov/crim.htm (last accessed on June 10, 2019).

(¶¶ 26-27). But Sanches would not let Awad's family into the facility and would not return Awad's personal property to his family members. *Ibid.* (¶ 26). Awad eventually filed this federal court complaint about two and a half years later on September 7, 2018. Doc. #1.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

Although Awad is no longer a prisoner, I need not decide for purposes of this ruling whether the initial review requirement of § 1915A extends to a plaintiff who was imprisoned at the time that he filed his complaint but who no longer remains in prison. *See* 28 U.S.C. § 1915A(c) (defining the term "prisoner"); *Johnson v. Hill*, 965 F. Supp. 1487, 1488 n.2 (E.D. Va. 1997). Because Awad is proceeding *in forma pauperis*, his complaint is alternatively subject to review pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Narcisse v. Dalphine*, 2016 WL 6963024, at *1 n.1 (D. Conn. 2016).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro*

*se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Awad's complaint alleges liability under 42 U.S.C. § 1983. This civil rights statute allows a plaintiff to seek relief against a person who acts under color of state law to violate a plaintiff's federal constitutional rights. A prerequisite for any claim under § 1983 is that the defendant have acted in a governmental capacity—that is, that the defendant was a "state actor" for purposes of the conduct that a plaintiff claims the defendant should be liable. Put differently, a plaintiff may not maintain an action under § 1983 against a private party unless the plaintiff shows that the private party's actions amounted to action that was undertaken in a state or governmental capacity. *See Fabrikant v. French*, 691 F.3d 193, 206-09 (2d Cir. 2012).

Just what does it mean for a private party to be a state actor? The Second Circuit has articulated three different tests to answer this question. "A private entity acts under color of state law for purposes of § 1983 when (1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (internal quotations omitted). Thus, "[t]he fundamental question under each test is whether the private entity's challenged actions are fairly attributable to the state." *Ibid.* (internal quotations omitted).

In *McGugan*, the Second Circuit considered whether a private hospital was a state actor for purposes of a § 1983 claim by a plaintiff who was subject to civil commitment and involuntary mental health treatment after he was brought to the hospital by police officers. *Id.* at

4

227-28. "[T]he question [was] whether the forcible medication and hospitalization of [plaintiff] McGugan by private health care providers can fairly be attributed to the state." *Id.* at 229.

The Second Circuit answered this question in the negative. Despite the fact that the hospitalization of the plaintiff had stemmed from the state action of the police officers, the Second Circuit could not "discern" any reason "why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors." *Id.* at 230.

Nor was it enough in *McGugan* that the hospitalization stemmed from a state statutory scheme that empowered the hospital to detain the plaintiff for mental health treatment. "[T]he state endowed [the hospital defendants] with the authority to involuntarily hospitalize (and medicate) the plaintiff, but it did not compel them to do so." *Id.* at 229.

The Second Circuit's decision in *McGugan* controls here. Awad does not allege that the Sierra Pre-Trial Program was itself owned or managed by the government.[2] Nor does he allege that the individual defendants Sanches and Stanly were government employees. As to governmental action, he alleges solely that it was a governmental actor—a state court—that ordered him to reside at the Sierra Pre-Trial Program. But he does not allege that the court ordered any of the defendants to violate his rights, *i.e.*, to subject him to bed bugs, to under-nourish him, to interfere with his employment, or to confiscate his property.

Despite the program's relationship to the criminal justice system, it is not apparent that the Sierra treatment program performs a function that is inherently governmental in nature. *See, e.g.*, *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004) (noting that "[s]tate

---

[2] Nor is it clear that the "Sierra Pre-Trial Program" is itself an organization or entity of any sort, as distinct from an operational program of a company or organization that has not been named as a defendant in this action. *See* The Connection website, Community Justice Services, The SIERRA Center, *available at* https://www.theconnectioninc.org/community-justice-services (last accessed June 10, 2019). For present purposes only, I will assume the Sierra Pre-Trial Program has a juridical status that would allow for it to be named as a defendant in a lawsuit.

5

action may be found in situations where an activity that traditionally has been the exclusive, or near exclusive, function of the State has been contracted out to a private entity"). Mental health treatment is not an exclusive prerogative of the government such that a private residential treatment program should be viewed as carrying out a core governmental function akin to a jail or prison.

As in *McGugan*, Awad has not alleged sufficient facts to suggest that the conduct of any of the private actor defendants are governmental in nature or otherwise fairly attributable to any government or governmental actor. *See also Amid v. Chase*, 720 F. App'x 6, 10-11 (2d Cir. 2017) (reaffirming *McGugan* to conclude that private hospital was not state actor for purposes of plaintiff's § 1983 claim against hospital stemming from her detention for mental health treatment and rejecting argument that state action could be inferred simply from the fact that police officers instructed the hospital to detain plaintiff). Accordingly, Awad has not alleged facts that give rise to plausible grounds for relief under 42 U.S.C. § 1983.

## CONCLUSION

The Court DISMISSES this action pursuant to 28 U.S.C. § 1915A and § 1915(e)(2)(B), because the complaint does not allege facts to give rise to plausible grounds for relief under federal law. The Clerk of Court shall close this case. If Awad believes in good faith that he is able to allege facts to show that any of the defendants were state actors, then he may file a motion to reopen this case along with a proposed amended complaint on or before **July 11, 2019**. This ruling is without prejudice to Awad's right to seek any relief as to any state law claims in the state courts of Connecticut.

It is so ordered.

Dated at New Haven this 11th day of June 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge